## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DR. SCOTT JENSEN,<br><br>        Plaintiff,<br><br>        v.<br><br>MINNESOTA BOARD OF MEDICAL PRACTICE; RUTH MARTINEZ, ELIZABETH A. HUNTLEY, CHERYL L. BAILEY, JOHN M. MANAHAN, PETER J. HENRY, in both their individual and official capacities as members of the Minnesota Board of Medical Practice; BRIAN ANDERSON in his individual and official capacity as a medical regulations analysts for the Minnesota Board of Medical Practice, JANE ROES 1-12, in both their individual and official capacities as members of the Minnesota Board of Medical Practice; and JOHN DOES 1-4, in both their individual and official capacities as members of the Minnesota Board of Medical Practice,<br><br>        Defendants. | Court File No. 23-CV-01689-JWB-DTS<br><br><br><br>**DEFENDANTS'**<br>**MEMORANDUM OF LAW**<br>**IN SUPPORT OF**<br>**MOTION TO DISMISS** |

### INTRODUCTION

Plaintiff Scott Jensen, M.D., brings claims against the Minnesota Board of Medical Practice and multiple Board Defendants, alleging that Defendants violated his right to free speech by taking certain steps to investigate complaints the Board received regarding Plaintiff's medical license pursuant to the Board's statutory complaint resolution process. Defendants move to dismiss the case in its entirety because (1) Plaintiff's claims are barred

1

by sovereign and qualified immunity, (2) Plaintiff lacks standing and any claims made by Plaintiff are moot, and (3) Plaintiff's claims for relief fail as a matter of law. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

### I.   BACKGROUND OF BOARD OF MEDICAL PRACTICE AND PLAINTIFF'S COMPLAINT.

The Board of Medical Practice was created by the Minnesota Legislature pursuant to the Medical Practice Act. *See* Minn. Stat. ch. 147. The Medical Practice Act identifies the purpose of the Board as follows: "The primary responsibility of the Board of Medical Practice is to protect the public." Minn. Stat. § 147.001, subd. 2. The Practice Act's purpose statement further provides that, "In the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and unlawful practice of medicine, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine." *Id.*

The Minnesota Legislature has found "that the interests of the people of the state are served by the regulation of certain occupations" and "that it is desirable for boards composed primarily of members of the occupation so regulated to be charged with formulating the policies and standards governing the occupation." Minn. Stat. § 214.001, subd. 1. To that end, the Board of Medical Practice consists of 16 residents of the state of Minnesota appointed by the governor, including 11 board members licensed to practice

medicine in Minnesota and five members of the public who are not physicians.  *See* Minn. Stat. § 147.01, subd. 1 (setting forth requirements for composition of Board members and provision of Board staff).

The Board of Medical Practice is one of 17 health-related licensing boards in the State of Minnesota.  *See* Minn. Stat. § 214.01, subd. 2 (listing all health-related licensing boards).  The statutory process for receipt and resolution of complaints submitted to the health-related licensing boards is set forth in Minnesota Statutes section 214.103.  The Board of Medical Practice, like all other health-related licensing boards, has a duty to receive and resolve complaints against regulated persons.  The statutory process for receipt of complaints by Minnesota's health-related licensing boards is as follows:

> **Receipt of complaint.**  The boards shall receive and resolve complaints or other communications, whether oral or written, against regulated persons. Before resolving an oral complaint, the executive director or a board member designated by the board to review complaints shall require the complainant to state the complaint in writing or authorize transcribing the complaint. The executive director or the designated board member shall determine whether the complaint alleges or implies a violation of a statute or rule the board is empowered to enforce.  The executive director or the designated board member may consult with the designee of the attorney general as to the board's jurisdiction over a complaint.  If the executive director or the designated board member determines that it is necessary, the executive director may seek additional information to determine whether the complaint is jurisdictional or to clarify the nature of the allegations by obtaining records or other written materials, obtaining a handwriting sample from the regulated person, clarifying the alleged facts with the complainant, and requesting a written response from the subject of the complaint.  The executive director may authorize a field investigation to clarify the nature of the allegations and the facts that led to the complaint.

Minn. Stat. § 214.103, subd. 2.

The statutory process for attempts at resolution of complaints received by Minnesota's health-related licensing boards is as follows:

> **Attempts at Resolution.**  (a) At any time after receipt of a complaint, the executive director or the designated board member may attempt to resolve the complaint with the regulated person.  The available means for resolution include a conference with the regulated person or oral communication with the regulated person.  A conference may be held for the purpose of investigation, negotiation, education, or conciliation.  Neither the executive director nor any member of the board's staff shall be a voting member in any attempts at resolutions which may result in disciplinary or corrective action. The results of attempts at resolution with the regulated person may include a recommendation to the board for disciplinary action, an agreement between the executive director or the designated board member and the regulated person for corrective action, or the dismissal of a complaint.  If attempts at resolution are not in the public interest, a contested case hearing may be initiated.

Minn. Stat. § 214.103, subd. 6(a).

Plaintiff seeks judicial relief based upon the statutory duty performed by the members serving on the Board's Complaint Review Committee, and staff supporting the Committee, in receiving and resolving 18 complaints about Plaintiff that were submitted to the Board between April 2020 and June 2022.  The allegations relate to concerns that during the COVID-19 Pandemic, Plaintiff (1) advised the public that masks and vaccines were not effective in preventing transmission of COVID-19; (2) advised his patients to use Ivermectin to treat or prevent COVID-19 without scientific proof of its effectiveness and failed to document appropriately in patients' medical records; (3) claimed that the Minnesota Department of Health was advising doctors to falsify death certificates; (4) advised the public that COVID-19 was not harmful to children; and (5) put his patients at

risk of exposure to and transmission of COVID-19 by not wearing a mask in his clinic while seeing patients in contravention of the standard of care in medical settings during the COVID-19 pandemic. (Compl. Ex. 6.)[1]

## II.  BOARD STAFF PROCESSED COMPLAINTS CONSISTENT WITH MINNESOTA LAW.

As the Board received complaints about Plaintiff, a Board staff member sent letters to Plaintiff with notice that he was the subject of a complaint as required by the statutory complaint resolution process for health-related licensing boards.  (Compl. Exs. 1-5); Minn. Stat. § 214.103, subd. 1a(b).[2]  The Board's letters also informed Plaintiff of his statutory duty under the Medical Practice Act to cooperate with the Board's investigation of complaints.  *See* Minn. Stat. § 147.131 ("A physician who is the subject of an investigation by or on behalf of the board shall cooperate fully with the investigation.").  The Board's letters to Plaintiff outlined the statutory complaint resolution process and stated, "Please note that these are allegations only.  The Board makes no assumptions regarding the truth of these allegations."  (Exs. 1-5.)  Further, the Board's letters noted that Licensee's response and all data collected as a result of the inquiry would be kept confidential, as required by the Minnesota Government Data Practices Act and the Medical Practice Act.

---

[1] On a motion to dismiss, "materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint."  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1985).

[2] Within 60 days of receiving a complaint regarding a licensee, the board must notify the licensee that the board has received the complaint and inform the licensee of the substance of the complaint, the sections of law or professional rules allegedly violated, and whether an investigation is being conducted, unless the board determines that such notice would compromise the board's investigation or that such cannot reasonably be accomplished within this time.

(*Id.*)  *See* Minn. Stat. § 13.41, subd. 4 (stating that "active investigative data relating to the investigation of complaints against any licensee" are classified as confidential); Minn. Stat. § 147.01, subd. 4 (stating that "all communications or information provided by or disclosed to the board relating to any person or matter subject to its regulatory authority are confidential and privileged").

The Board's letters to Plaintiff, and its subsequent Notice of Conference, identified the following provisions of the Medical Practice Act as the sections of law allegedly violated by Plaintiff in connection with the complaints received by the Board.  Each of these provisions is identified in the Practice Act under Minnesota Statutes section 147.091, subdivision 1 as prohibited conduct for a licensed physician and grounds for disciplinary action by the Board.

First, the Board identified section 147.091, subdivision 1(g), which prohibits physicians licensed by the Board from "Engaging in any unethical conduct, including but not limited to: (1) conduct likely to deceive or defraud the public; (2) conduct likely to harm the public; (3) conduct that demonstrates a willful or careless disregard for the health, welfare, or safety of a patient; (4) medical practice that is professionally incompetent; and (5) conduct that may create unnecessary danger to any patient's life, health, or safety, in any of which cases, proof of actual injury need not be established."

Second, the Board identified section 147.091, subdivision 1(k), which prohibits physicians licensed by the Board from engaging in "Conduct that departs from or fails to conform to the minimal standards of acceptable and prevailing medical practice in which case proof of actual injury need not be established."

Third, the Board identified section 147.091, subdivision 1(o), which prohibits physicians licensed by the Board from engaging in "Improper management of medical records, including failure to maintain adequate medical records, to comply with a patient's request made pursuant to sections 144.291 to 144.298 or to furnish a medical record or report required by law."

Finally, the Board identified section 147.091, subdivision 1(s), which prohibits physicians licensed by the Board from engaging in "Inappropriate prescribing of or failure to properly prescribe a drug or device, including prescribing a drug or device for other than medically accepted therapeutic experimental or investigative purposes authorized by state or federal law."

## III.   THE BOARD CONCLUDED ITS INVESTIGATION AND DISMISSED THE COMPLAINTS.

Following its investigation and review of Plaintiff's written responses to the complaints, the Board dismissed the complaints it received about Plaintiff between April and July 2020.  After dismissal of these complaints, however, the Board received additional complaints about Plaintiff related to the concerns identified above.  (Exs. 1-5).  Following receipt of additional complaints about Plaintiff, the Board reopened the previously dismissed complaints and proceeded with the next step in the statutory complaint resolution process by sending Plaintiff a Notice of Conference, scheduling a time for the Board's Complaint Review Committee and Plaintiff to meet to discuss the allegations at issue.  *See* Minn. Stat. § 214.103, subds. 6(a) (stating that a "conference may be held for the purpose of investigation, negotiation, education, or conciliation") and 8(b) (stating that a health-

related licensing board "may reopen a dismissed complaint if the board receives newly discovered information that was not available to the board during the initial investigation of the complaint, or if the board receives a new complaint that indicates a pattern of behavior or conduct").

Shortly after receiving the Board's first letter notifying him of its receipt of a complaint in April of 2020, Plaintiff began to discuss the Board's otherwise-confidential complaint resolution process with the media, as reflected in a *Star Tribune* article, as well as in a video he posted to his Twitter account, which then became the source of an article on *Breitbart.com*.  (Compl. ¶¶ 92, 97.)  As alleged in his lawsuit, during the spring and summer 2021, Plaintiff "continued to speak his perspective" about the government's response to COVID-19, and in September 2021 he "made national news" by calling for "civil disobedience of COVID policies."  (Compl. ¶¶ 146, 171.)

Plaintiff does not allege that the Board publicly disclosed the nature of the allegations against him, its implementation of the statutory complaint resolution process, or even the existence of any of the complaints it received about him.  *See* Minn. Stat. §§ 13.41, subd. 4 and 147.01, subd. 4 (providing that complaints and data received by the Board related to active investigations are confidential).

The Board proceeded with the final step of its complaint resolution process by issuing Plaintiff a Notice of Conference on January 25, 2023, scheduling a conference for Plaintiff to meet with the Complaint Review Committee to discuss allegations and concerns identified therein following the Board's receipt of 18 complaints about Plaintiff during the COVID-19 Pandemic.  (Ex. 6.)  Plaintiff appeared for a conference with the Board's

Complaint Review Committee on March 24, 2023.  During the conference, Board members serving on the Complaint Review Committee asked Plaintiff questions related to the complaints the Board received regarding Plaintiff, as set forth in the Notice of Conference. Following the conference, the Complaint Review Committee dismissed all complaints that had been filed with the Board regarding Plaintiff, including those complaints that had previously been dismissed and reopened by the Board for a consolidated review at the conference.

## LEGAL STANDARD

A party may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted to be true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Courts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions."  *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).  "[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint."  *Becker*, 793 F.2d at 187.  In addition, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  In order to survive a motion to dismiss, a claim for relief under 42 U.S.C. § 1983 must sufficiently allege facts "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir.2009).  "[T]o state a cause of action under § 1983, a

plaintiff must plead facts that would tend to establish that the defendant's wrongful conducted *caused* the constitutional deprivation." *Zutz v. Nelson*, 601 F.3d 842, 851 (8th Cir. 2010) (emphasis in original).

## ARGUMENT

The Court should grant Defendants' motion to dismiss because state agencies and their officials are immune from suit in their official and individual capacities and no exception applies, Plaintiff does not assert a justiciable controversy, and Plaintiff's claims fail as a matter of law.

## I.   THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST THE BOARD AND AGAINST ALL DEFENDANTS IN THEIR OFFICIAL CAPACITY.

A state, its agencies, and agency officials are immune from suit in federal court unless the state has consented to be sued or Congress has abrogated the state's immunity by an express statutory provision.  U.S. Const. amend. XI; *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the state, or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as citizens of another state.").  Federal courts lack jurisdiction over both federal and state-law claims against states that have not waived such immunity.  *See Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override

10

the Eleventh Amendment."); *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968-69 (8th Cir. 2000) (barring a lawsuit by a Minnesota resident against an instrumentality of the state based upon sovereign immunity principles).

The State of Minnesota has not waived its Eleventh Amendment immunity from suit in federal court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985) (recognizing that Minnesota's limited waiver of sovereign immunity from tort actions in state court is not a waiver of Eleventh Amendment immunity from suit in federal court). And Congress has not abrogated the Minnesota's immunity to Section 1983 claims. *See Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) ("Section 1983 does not override Eleventh Amendment immunity."). Further, no exception applies to allow Plaintiff's official-capacity claims. Therefore, Plaintiff's claims against the Board, and against all Board and staff members in their official capacities, must be dismissed due to Eleventh Amendment immunity.

The Supreme Court in *Ex parte Young* established a limited exception to Eleventh Amendment immunity permitting a private party to sue state officers in their official capacity to enjoin prospective actions that would violate federal law. 209 U.S. 123, 138 (1908). To determine whether the *Ex parte Young* exception applies, "a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*

*of Maryland*, 535 U.S. 635, 645 (2002)).  Here, Plaintiff does not allege sufficient facts to show an ongoing First Amendment violation necessitating injunctive relief, and therefore the *Ex parte Young* exception does not apply for three primary reasons.

First, the Court should reject Plaintiff's claim that section 147.091, subdivision 1(g) of the Medical Practice Act inherently targets speech and is therefore facially unconstitutional.  Facial challenges are used "sparingly and only as a last resort."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (citation and quotation marks omitted).  To prevail on a facial challenge, Plaintiff must establish that "no set of circumstances exist" under which the statute would be valid, or that the statute "lacks any plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 472 (2010).

Contrary to Plaintiff's claim, section 147.091, subdivision 1(g), does not target speech.  Rather, it provides the Board discretionary authority to impose disciplinary action against licensees who engage in "unethical or improper conduct, including but not limited to (1) conduct likely to deceive or defraud the public; (2) conduct likely to harm the public; (3) conduct that demonstrates a careless disregard for the health, welfare, or safety of a patient; (4) medical practice that is professionally incompetent; and (5) conduct that may create unnecessary danger to any patient's life, health, or safety, in any of which cases, proof of actual injury need not be established."  While unethical or improper conduct may in some circumstances involve speech, the Supreme Court has held that "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech."  *NIFLA v. Becerra,* 138 S. Ct. 2361, 2372 (2018) (noting circumstances in which professional speech can be properly limited by statute).  As set forth in Plaintiff's

Complaint and its attachments,[3] the Board conducted confidential investigations of the complaints it received about Plaintiff, which it is authorized to do as part of its statutory complaint resolution process. After the Board's Complaint Review Committee received Plaintiff's written responses to the complaints and met with him at a conference to discuss the allegations therein, the Committee determined that dismissal was the appropriate resolution of the complaints it received about Plaintiff. Even accepting as true, for the purpose of this motion, Plaintiff's allegation that the Board's investigation chilled his speech, such effect was incidental to the Board's lawful investigative duties. *Id.*

Second, the Court should reject Plaintiff's claim that, as applied to him, section 147.091, subdivision 1(g) of the Medical Practice Act is unconstitutional because the Board's investigations purportedly targeted Plaintiff's speech, and the Board had no jurisdiction to investigate Plaintiff's conduct as it pertains to speech. In fact, as noted above, the Board is statutorily required to receive and resolve complaints against regulated persons, and in doing so, the Board may seek additional information to determine whether the complaint is jurisdictional or to clarify the nature of the allegations at issue. Minn. Stat. § 214.103, subd. 2. That is what happened here. The Board received 18 complaints about Plaintiff, some with allegations pertaining to his public statements related to prevention and treatment of COVID-19 during the Pandemic, in addition to allegations related to his prescribing of Ivermectin to patients without appropriate scientific basis and documentation, and his failure to wear a mask while seeing patients and potentially placing

---

[3] As noted above, materials attached to a summons and complaint may be considered on a motion to dismiss. *See, e.g., Becker*, 793 F.2d at 187.

them at risk for exposure to and transmission of COVID-19.  The Board investigated the complaints and determined that the complaints should be dismissed without disciplinary action.  The facts alleged in Plaintiff's Complaint do not support its conclusion that the Board's lawful investigative steps constitute a violation of his constitutional rights.

Third, even if Plaintiff were to state a viable First Amendment claim, Plaintiff does not allege facts that any such violation is ongoing.  All complaints received by the Board about Plaintiff, including those that had previously been dismissed and reopened, were dismissed in their entirety on March 24, 2023, and Plaintiff does not allege that these complaints have since been reopened, or that any new complaints have been received or investigated.  Therefore, there is no ongoing state action to enjoin.

Plaintiff alleges no ongoing violation of the First Amendment by or through the Board's application of the statutory complaint resolution process.  Accordingly, the *Ex parte Young* exception does not apply, and the Eleventh Amendment prohibits Plaintiff's claims against the Board and all Defendants sued in their official capacity.

## II.   PLAINTIFF'S SUIT AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY IS BARRED BY QUALIFIED IMMUNITY.

Even if the Defendants were not completely immune from suit by virtue of the Eleventh Amendment, Plaintiff's claims would be barred by qualified immunity. Government officials engaged in discretionary functions are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  *Baker v. Chaplin*, 517 N.W.2d 911, 914 (Minn. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also*

*Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (extending qualified immunity to "mistaken judgments," but not to "the plainly incompetent or those who knowingly violate the law.") (quotation omitted). "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation omitted). Therefore, an official's entitlement to qualified immunity "should be resolved at the earliest possible stage to shield officers from disruptive effects of broad-ranging discovery and effects of litigation." *Elwood v. Cnty. of Rice*, 423 N.W.2d 671, 675 (Minn. 1988) (internal citation omitted).

These fundamental principles of qualified immunity are codified in the Minnesota Medical Practice Act, which provides that "[m]embers of the board, persons employed by the board, consultants retained by the board for the purpose of investigation of violations, the preparation of charges and management of board orders on behalf of the board are immune from civil liability and criminal prosecution for any actions, transactions, or publications in the execution of, or relating to, their duties under sections 147.01 to 147.22." Minn. Stat. § 147.121, subd. 2(a).[4]

"To overcome qualified immunity, a plaintiff must be able to prove that every reasonable official would have understood that what he is doing violates a constitutional

---

[4] Minnesota law includes similar immunity provisions for other health-related licensing boards, indicating a state policy of ensuring that board members and staff can perform their duties without fear of civil liability from disgruntled licensees who are the subject of investigation or disciplinary action by the boards. *See, e.g.*, Minn. Stat. § 148.103, subd. 2 (immunity for members and staff of the Minnesota Board of Chiropractic Examiners); Minn. Stat. § 148.264, subd. 2(a) (immunity for members and staff of the Minnesota Board of Nursing); Minn. Stat. § 151.073, subd. 2(a) (immunity for members and staff of the Minnesota Board of Pharmacy).

right . . . and that the constitutional question was beyond debate." *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (internal quotation marks and citation omitted).  Such law must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal quotation marks and citations omitted).  This authority must also present "similar [factual] circumstances." *White v. Pauly*, 580 U.S. 73, 79 (2017).

Courts apply a two-prong test to resolve questions of qualified immunity, asking whether (1) the facts alleged make out a constitutional violation, and (2) if the right at issue was "clearly established" at the time of the official's alleged misconduct.  *Pearson*, 555 U.S. at 235.  Plaintiff's individual capacity claims fail under both prongs.

### A. Plaintiff Has Not Alleged Facts that Make Out a Constitutional Violation.

Plaintiff has not alleged facts supporting a constitutional violation.  Plaintiff's claims in support of a purported constitutional violation rest on his contention that the Board properly dismissed the complaints it received about him but that the complaints should have been dismissed earlier and without investigation.  Plaintiff contends that the Board's investigations chilled his speech, despite the fact that Plaintiff continued to speak publicly on the same topics that were the subject of some of the allegations at issue in the complaints received by the Board.  Moreover, any public statements regarding the complaints against Plaintiff and the Board's investigation of the complaints came from Plaintiff, not the Board.

First Amendment rights are not absolute, and the Supreme Court has recognized legitimate state interests in regulating the practice of medicine.  *See, e.g., Lambert v. Yellowley*, 272 U.S. 581, 596 (1926) ("[t]here is no right to practice medicine which is not subordinate to the police power of the States"); *Graves v. Minnesota*, 272 U.S. 425, 429 (1926) (statutes "regulating the practice of medicine" involve "very different considerations" from those applicable to "trades [such as] locomotive engineers and barbers"); *Semler v. Oregon Bd. of Dental Examiners*, 294 U.S. 608, 612 (1935) (upholding state regulation of dentistry given the "vital interest of public health").  The important role of state medical boards in assuring the professional conduct of physicians is a well-settled function of the states' police power.  *Wassef v. Tibben*, 68 F.4th 1083, 1090 (8th Cir. 2023) (upholding district court's dismissal of claims by physician seeking to halt disciplinary proceedings of state medical licensing board); *see also* Minn. Stat. §§ 214.001, subd. 1 (identifying policy supporting regulation of certain occupations in Minnesota by boards composed primarily of members of the occupations so regulated) and 147.001, subd. 2 (identifying the purpose of the Minnesota Board of Medical Practice and stating that its "primary responsibility and obligation is to protect the public").

On its face, Plaintiff's Complaint indicates that Plaintiff has continually exercised his First Amendment right to speak, on social media and other public forums, about his views regarding the government's policy responses to COVID-19.  Plaintiff's Complaint further establishes that the Board has taken no disciplinary action against Plaintiff's medical license; indeed the Board ultimately dismissed all of the complaints it received about Plaintiff.   Plaintiff cannot plausibly claim that he is entitled to a finding that although

he received no disciplinary action and has continued to speak publicly, that by taking statutorily-mandated steps to receive and resolve complaints about its licensees the Board, Board members, and Board staff violated Plaintiff's constitutional rights.

**B.  Plaintiff Has Not Identified a Violation of Any Constitutional Right, Let Alone One that is Beyond Debate Such that Every Reasonable Official Would Have Understood that the Board Would Be Violating the Law by Fulfilling Its Statutory Duty to Receive and Resolve Complaints.**

Even if assumed for the sake of argument that Plaintiff alleged facts that make out a constitutional violation, the purported right at issue was not clearly established at the time of the alleged violation.  "To overcome qualified immunity, a plaintiff must be able to prove that every reasonable official would have understood that what he is doing violates a constitutional right . . . and that the constitutional question was beyond debate." *Story v. Foote*, 782 F.2d 968, 970 (8th Cir. 2015) (internal quotation marks and citation omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).  Such law must be "dictated by controlling authority or a robust consensus of cases of persuasive authority" *Id*. at 589-90 (internal quotation marks and citations omitted)), and present "similar [factual] circumstances." *White v. Pauly*, 580 U.S. 73, 79 (2017).

As noted above, the Board members and staff handling receipt and resolution of complaints about Plaintiff followed the process set forth in Minnesota Statutes section 214.103.  Minnesota law provides that health-related licensing boards shall notify licensees of complaints received regarding their licenses, and authorizes the Board to take

18

investigative steps to determine whether the Board has jurisdiction over the complaints. *See, e.g.*, Minn. Stat. § 214.103, subd. 2. Such steps can include seeking additional information through investigation to determine whether complaints allege or imply a violation of a statute or rule the Board is empowered to enforce. *Id*. Plaintiff cannot plausibly claim that by following steps outlined in Minnesota law for receipt and resolution of complaints against a regulated person, Board members or staff engaged in conduct so violative of his constitutional rights that such violations are "beyond debate." *Wesby*, 138 S. Ct. at 589.

Further, the state of the law at the time of the alleged violation must give officials fair warning of the unlawfulness of their conduct, through "precedent," "controlling authority," or a "robust consensus of cases of persuasive authority." *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 835 (8th Cir. 2021) (quoting *Wesby*, 138 S. Ct. at 589-90). Plaintiff erroneously asserts that the Supreme Court's decision in *NIFLA v. Becerra* supports his claims. *NIFLA*, however, concerns compelled speech, specifically a California law that required crisis pregnancy centers to provide a pre-drafted notice to patients regarding abortion-related laws and services in the state. *NIFLA v. Becerra,* 138 S. Ct. 2361, 2368-70 (2018). Here, the Board is not compelling speech from Plaintiff or any other physician licensed to practice medicine in the State of Minnesota. Contrary to Plaintiff's claim, *NIFLA* does not stand for the proposition that any public speech involving the practice of medicine, but not tied directly to the act of caring for a specific patient, is outside the reach of a licensing board's ability to investigate or regulate a licensee's

conduct. The actions of Board members and staff were consistent with Minnesota law requiring health-related licensing boards to receive and resolve complaints.

## III.   PLAINTIFF'S CLAIMS FAIL FOR LACK OF STANDING AND MOOTNESS.

The Board dismissed all complaints against Plaintiff without disciplinary action on March 24, 2023, well before Plaintiff commenced this lawsuit. Accordingly, Plaintiff's claims fail for lack of standing and mootness. "Article III of the Constitution confines the federal courts to adjudicating actual cases and controversies." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Thus, a litigant must have standing to challenge the action sought to be adjudicated. *Id.* In addition, justiciability "concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991). Plaintiff's Complaint both fails to demonstrate a live controversy and fails to meet the standing requirements of an injury-in-fact causally connected to the conduct brought before the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (outlining requirements for federal standing).

### A.   Plaintiff's Claims Fail for Lack of Standing Because He Has Not Alleged a Sufficient Injury-in-Fact with a Direct Causal Connection to the Board's Actions.

Constitutional standing, at minimum, requires the party invoking federal jurisdiction to identify a "concrete and particularized" injury-in-fact that is "actual or imminent, not conjectural or hypothetical." *Owner-Operator Indep. Drivers Ass'n, Inc. v.*

*United States Dep't of Transportation*, 831 F.3d 961, 966 (8th Cir. 2016) (quoting *Lujan*, 504 U.S. 555 at 560).  The elements of standing cannot be inferred argumentatively from the pleadings; rather, they must "affirmatively appear in the record." *Id.*

Plaintiff alleges "potential future harm" including possible "disciplinary or corrective action" and "adverse action" against his license.  Here, the Board did no more than follow the statutory complaint resolution process by providing notice to Plaintiff of the substance of the allegations in the complaints it had received about him, the sections of law allegedly violated, and information about Plaintiff's rights and responsibilities in connection with the Board's investigation of these complaints.  *See* Minn. Stat. § 214.103, subd. 1a(b) (stating that health-related licensing boards must provide licensees notice and information about a complaint).  Notably, there is no pending complaint before the Board or ongoing investigation which could result in adverse action against Plaintiff's license.  When bringing a preenforcement First Amendment challenge, review is permissible if there are "circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Nothing in Plaintiff's Complaint makes apparent that an enforcement action is imminent.

First, Plaintiff makes no claim that he intends to engage in further conduct that could potentially constitute prohibited conduct for licensed physicians under section 147.091, subdivision 1 the Medical Practice Act.  Plaintiff's prior conduct, including that involving commentary on matters of public health such as the efficacy of COVID-19 vaccines for children, and commentary on the practice of medicine such as the guidance issued by the Minnesota Department of Health for recording COVID-19 on death certificates, was

properly subject to the complaint review and resolution process required of all health-related licensing boards under Minnesota Statutes section 214.103.  Following that process, the Complaint Review Committee dismissed all complaints with no disciplinary action.  A risk of imminent enforcement does not flow from the Board's affirmative decision to dismiss the complaints it received against Plaintiff.

Second, Plaintiff alleges that his speech was chilled by the Board's fulfillment of its statutory duty to receive and resolve complaints against licensed physicians.  But self-censorship based on "mere allegations of a subjective chill" resulting from a statute does not adequately support standing.  *281 Care Comm. v. Arneson*, 638 F.3d 621, 267 (8th Cir. 2011) (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).  Rather, the chilling effect demonstrated by the exercise of a First Amendment right must be "objectively reasonable." *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009).  Reasonable chill exists when a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Additionally, to prevail on a claim of First Amendment retaliation, a plaintiff must show that adverse action taken against him would "chill a person of ordinary firmness" from continuing to speak, and the plaintiff's own actions "might be evidence of what a reasonable person would have done."  *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (quotation omitted).

The allegations in Plaintiff's complaint fail to demonstrate an objectively reasonable chilling effect, showing as they do that Plaintiff did not self-censor, and that Plaintiff

continued to speak extensively regarding Covid-19 and related policy issues.  As noted above, immediately after receiving notification of the first complaint, Plaintiff spoke to local and national media about the Board's investigation.  Further, Plaintiff continued to take prominent public positions regarding COVID-19 and related policy.  Plaintiff's own actions undermine any claim that a reasonable person's speech would be chilled as a result of the Board's investigative steps.

Further, any injury in fact must be "fairly traceable to the challenged action of the defendant" and redressable by a favorable decision.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).  Here, however, Plaintiff has in large part created his own purported harm.  Plaintiff alleges that the investigative process undertaken by the Board was intended to damage his political reputation.  Even assuming that this allegation is true for the sake of argument, which it is not, reputational damage alone does not implicate a sufficient constitutional interest to invoke procedural due process protections.  *See Paul v. Davis*, 424 U.S. 693, 710 (1976) (stating that reputational interests are neither "liberty nor property guaranteed against state deprivation without due process of law.").

The Board made no public disclosure about the existence, or its investigation, of complaints it received about Plaintiff during its confidential complaint resolution process.  *See* Minn. Stat. § 13.41, subd. 4 (defining "confidential data" to include "active investigative data relating to the investigation of complaints against any licensee").  Plaintiff's claims fail as a matter of law because "[a] person's reputation, by its nature, exists in the public sphere, and undisclosed information cannot cause reputational harm."

*J.K. ex rel. Kaplan v. Minneapolis Pub. Sch. (Special Sch. Dist. No. 1)*, 849 F. Supp. 2d 865, 878 (D. Minn. 2011).   Moreover any information collected, created, and maintained by the Board regarding the complaints it received about Plaintiff and the Board's investigations of these complaints was confidential under Minn. Stat. § 13.41, subd. 4.  The information became public because Plaintiff chose to make it public.  Plaintiff's assertion that the Board's confidential investigation has caused harm to his reputation is pure conjecture, and any such harm would be due to Plaintiff's own disclosures regarding the Board's investigation.  *See Hannah v. Larche*, 363 U.S. 420, 443 (1960) (holding that hypothetical sanctions against an individual by a government agency cannot sustain a constitutional challenge to the agency's lawful activities).

Plaintiff additionally complains of purported harm of expending time and money to respond to the Board's request that he provide a written response and appear for a conference with the Board's Complaint Review Committee to discuss the allegations in the complaints received by the Board.  Yet elsewhere in his complaint, Plaintiff contends that he was treated unfairly when complaints were investigated and dismissed before he had the chance to respond.  The Board was fulfilling its statutory duty to receive and resolve complaints by requesting Plaintiff's cooperation with its investigation.  *See* Minn. Stat. § 214.103, subd. 6 (establishing mechanisms by which health-related licensing boards may seek resolution of complaints).  Any purported injuries Plaintiff alleges are not traceable to the Board, which was fulfilling its statutory duty to receive and resolve complaints by notifying Plaintiff of the substance of the allegations in the complaints, identifying the

sections of the Medical Practice Act allegedly violated, and requesting that Plaintiff cooperate with the Board's investigation of the complaints.

**B.     Plaintiff's Challenge to the Board's Now-Concluded Investigations of Dismissed Complaints Is Moot.**

As with questions of standing, Article III mootness "arises from the Constitution's case and controversy requirement," limiting the federal courts' jurisdiction to "actual, ongoing cases and controversies." *Young Am.'s Found. v. Kaler*, 14 F.4th 879 (8th Cir. 2021). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted). Here, there is no live controversy about Plaintiff's legal rights, rendering the case moot.

The Board concluded its investigation into the complaints against Plaintiff, dismissing all of the complaints, months before Plaintiff commenced this suit. Plaintiff has not sufficiently alleged an ongoing controversy about his legal rights, basing his claim solely on his own self-serving statements that his speech was, and continues to be, chilled by the Board's investigation. This Court is empowered neither to "give opinions upon moot questions or abstract propositions," nor to make declarations "which cannot affect the matter at issue in the case before it." *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 789 (8th Cir. 2004) (quotations omitted). Despite Plaintiff's attempt to revive an already-dismissed complaint, there is no actual, ongoing controversy to adjudicate here.

IV.   **PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW**.

Ultimately, even if the Court were to find that Defendants are not immune and Plaintiff presents a live, justiciable controversy, Plaintiffs' claims for relief under Section 1983, including Counts I through III in their entirety and the portion of Counts IV and V based upon Section 1983 should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because his claims fundamentally fail as a matter of law.

To state a claim for relief under Section 1983, a plaintiff must allege facts sufficient to show that the defendants acted under color of state law, and that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir.2009); *see also Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). The Defendants were clearly acting under color of state law in performing the Board's statutory duty of receiving and resolving complaints about Plaintiff. Thus, the remaining question is whether Plaintiff is able to demonstrate that the Board's investigation deprived him of the constitutionally protected federal right to free speech, which he is unable to do as a matter of law.

The facts as alleged demonstrate that the Board investigated Plaintiff's conduct based upon numerous complaints it received alleging conduct that included recommendations that patients use a prescription medication in an unproven manner, patient documentation, failure to wear a mask in his office, and statements related to information provided on death certificates. As noted above, the complaints were dismissed following the investigation and conference. (Ex. 6.) The Board's Notice of Conference states that it contains allegations only. (*Id.*) Plaintiff was notified that the complaints were

26

dismissed and continued to engage in public discourse, despite his argument that the mere investigation of his conduct constituted censorship and chilled his speech.  As noted previously, under these circumstances Plaintiff cannot plausibly claim that his speech was chilled or that a person of ordinary firmness would be chilled.

Further, Plaintiff claims that he was subject to viewpoint discrimination and equal protection violations.  In particular, Plaintiff looks to a remark made by the Board's former executive director in 2018 expressing that, where the Board may become aware of complaints involving social media, it typically does not rely on social media in its investigative process.  Plaintiff claims that because the Board's letters and Notice of Conference made reference to social media in relation to the complaints received, he was somehow subject to differential treatment.  Importantly, however, the Board's investigative process did not rely solely on social media.  It relied on Plaintiff's cooperation with the investigation, as required by the Medical Practice Act, in providing written responses and participating in a conference for additional information and context – the very process Plaintiff alleges to have violated his rights.

Plaintiff also alleges that the Board declined to investigate other medical doctors who made public statements with messages contrary to Plaintiff's.  But beyond the bare assertion, Plaintiff alleges no facts supporting this claim.  Although "a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.'"  *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff's assertion that the Board's

investigation deprived him of his right to free speech or subjected him to viewpoint discrimination in violation of constitutional protections is not supported by the facts alleged in Plaintiff's Complaint.

## CONCLUSION

For all the reasons described above, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated:  July 21, 2023                    Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


 /s/ Nicholas Lienesch
NICHOLAS LIENESCH
Assistant Attorney General
Atty. Reg. No. 0392322

DAVID CULLEN
Assistant Attorney General
Atty. Reg. No. 0338898

445 Minnesota Street, #1400
St. Paul, Minnesota 55101-2131
(651) 757-1315 (Voice)
(651) 297-2576 (Fax)
nicholas.lienesch@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS