UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Dr. Scott Jensen,<br><br>    Plaintiff,<br><br>v.<br><br>Minnesota Board of Medical Practice; Ruth Martinez, Elizabeth A. Huntley, Cheryl L. Bailey, John M. Manahan, Peter J. Henry, *in both their individual and official capacities as members of the Minnesota Board of Medical Practice*; Brian Anderson, *in his individual and official capacity as a medical regulations analyst for the Minnesota Board of Medical Practice*; and Jane Roes 1–12 and John Does 1–4, *in both their individual and official capacities as members of the Minnesota Board of Medical Practice*,<br><br>    Defendants. | Civ. No. 23-1689 (JWB/DTS)<br><br><br><br>**ORDER ON<br>DEFENDANTS' MOTION<br>TO DISMISS** |

---

Douglas P. Seaton, Esq., and James V.F. Dickey, Esq., Upper Midwest Law Center, and Gregory James Joseph, Esq., Joseph Law Office PLLC, counsel for Plaintiff.

David M. Cullen, Esq., and Nicholas Lienesch, Esq., Minnesota Attorney General's Office, counsel for Defendants.

---

    When public health intersected with politics, the result was this lawsuit. This case raises questions of what happens under the First Amendment when a physician who is also a political candidate makes health-related statements about a global pandemic that prompt public complaints and actions from the state medical licensing board.

    Plaintiff Dr. Scott Jensen ran as the Republican candidate in the 2022 election for Minnesota Governor. (Doc. No. 1 ("Compl.") ¶ 1.) Because of his qualifications as a

licensed physician and reputation for challenging the "official narrative" around COVID-19, Jensen's campaign included commentary about the pandemic and how Governor Walz managed the State of Minnesota's response. Jensen spoke publicly, posted to social media, and appeared on television to share his views about the disease, treatment, and public health requirements. The Minnesota Board of Medical Practice received complaints about his health-related statements and behavior and invited Jensen to respond.

Minnesota law requires the Board to "receive and resolve" complaints against licensed physicians. Minn. Stat. § 214.103, subd. 2. It must discern whether a complaint involves a statute or rule the Board is empowered to enforce, but otherwise has discretion over how to initially respond. *Id.* It may seek additional information to determine jurisdiction or to clarify a complaint's allegations, but such information gathering is not required. *Id.* Short of a full investigation or a contested case hearing, the Board may make preliminary attempts to resolve a complaint by writing to, speaking with, or holding a conference with the subject physician. *Id.*, subd. 6(a). If further investigation is needed, or if resolution could result in discipline or corrective action, the Board must involve a designee of the state attorney general's office. *Id.*, subds. 5, 6(a). The Board may also reopen dismissed complaints if it receives new information or a new complaint indicating a pattern of behavior or conduct. *Id.*, subd. 8(b).

Between June 2020 and October 2021, the Board sent Jensen five notices that summarized the complaints filed against him. (*See* Compl. Exs. 1–5.) One notice simply informed him that a complaint had been received but was already dismissed, while the

four others invited a written response. (*Id.*) The final notice remained open for over a year, eventually leading to a conference with the Board in March 2023 to discuss the complaints about Jensen's public statements on COVID-19 and patient care that it had received from April 2020 to June 2022. (*Id.* ¶¶ 216, 252–53, Exs. 5–6.)

None of the complaints advanced beyond the information collection phase. Jensen submitted written materials when requested, and he answered questions at the previously mentioned conference. All complaints were eventually dismissed without proceeding to a contested hearing or resulting in any form of corrective action. Jensen does not allege that the Board issued any specific instructions or guidance regarding the content of his public statements, suggested modifications to the way he expressed his views, or recommended reducing the frequency of his public engagements.

Jensen now sues, claiming that the complaints and Board inquiries placed a "cloud of constant uncertainty" over his campaign. (Compl. ¶ 6.) He characterizes it as a "weaponization of a government agency," amounting to an "ideologically driven, politicized government censorship apparatus which retaliated against its opponent based on the content of the message he espoused." (*Id.* ¶¶ 7–8.) He sues the Board, its members, and a regulatory analyst (collectively "the Board"), claiming that the statutes authorizing the Board's receipt and investigation of citizen complaints violate the First Amendment on their face and as applied to him.

Defendants contend that Jensen's case should be dismissed because (1) Jensen lacks standing, and his claims are also moot; (2) the Board and its members are immune from suit; and (3) Jensen fails to state any constitutional claim.

3

Upon review, Jensen lacks standing under Article III of the Constitution because his Complaint does not establish the necessary injury in fact.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss, a plaintiff must provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires a complaint to contain enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not sufficient to merely recite the elements of a claim with conclusory supporting allegations devoid of factual enhancement. *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss, courts accept well-pled allegations as true and draw all reasonable inferences in the plaintiff's favor. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). However, legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions couched as factual allegations may be ignored. *See Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

### II. Analysis

Federal courts only have jurisdiction to resolve actual cases and controversies. U.S. Const. Art. III § 2, cl. 1. As the party invoking federal jurisdiction, Jensen has the burden to show that he has standing to assert his claims in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). He must do so using the manner and degree of evidence required at the current stage of litigation—the motion to dismiss stage here. *See id.*; *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 690–91 (8th Cir. 2017).

4

To demonstrate standing, a party must allege an injury in fact, causation, and redressability. *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012). An injury in fact is an actual or imminent concrete and particularized invasion of a legally protected interest. *Id.* To be concrete, the injury must actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). To be particularized, it must affect the plaintiff in a personal and individual way. *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). It must be more than a generalized grievance. *See United States v. Hays*, 515 U.S. 737, 743 (1995).

Jensen must show standing for each of his claims and each form of relief he seeks. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (collecting cases).

1.  **First Amendment claims**

Jensen's core claim is that the Board violated his First Amendment right to free speech. Two types of injuries can confer standing to seek First Amendment relief. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). The first is when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The second is when a plaintiff self-censors. *Id.* Self-censoring occurs when a plaintiff alleges he "would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). The plaintiff "must present more than allegations of a subjective chill," however, and must allege a "specific present objective harm or a threat of specific future harm" to establish standing. *Eckles v. City of Corydon*,

341 F.3d 762, 767 (8th Cir. 2003); *see also Thompson v. Adams*, 268 F.3d 609, 614 (8th Cir. 2001) (finding no First Amendment retaliation injury where the plaintiffs offered no evidence of actual or potential inhibitory effect on speech). Jensen does not plead an actual or imminent injury of any kind.

Jensen's Complaint does not set forth how his speech was or remains inhibited. Standing requires allegations that plausibly show there has been, or will be, a chilling effect on Jensen's speech, and that chilling effect must be objectively reasonable. *See Zanders v. Swanson*, 573 F.3d 591, 593–94 (8th Cir. 2009) (stating that "chilling effect alone may constitute injury," yet "the chilling effect . . . must be objectively reasonable"). Conclusory allegations that the Board intended to chill Jensen's speech and that the Board's actions "would chill a person of ordinary firmness" are insufficient because they do not establish a concrete or particularized injury to Jensen himself.

Jensen's reporting to the Board that he felt politically targeted and that the anonymous complaints had an "ongoing chilling and suppressing effect" (*see* Compl. ¶¶ 92, 118–19, 122) are insufficient to establish standing. Jensen does not allege that he ever refrained from speaking when he otherwise would have, or spoke less fully on the occasions that he did speak. In fact, the Complaint includes multiple examples of the opposite—of Jensen continuing to speak about COVID-19 in various forums. (*See id.* ¶¶ 102, 133, 152–53, 188, 236.)

For example, Jensen alleges that by the fall of 2020—which was after two Board complaints had been lodged, investigated, and dismissed—his public statements had earned him "a reputation as someone who was unafraid to challenge the official health

6

care narrative." (*Id.* ¶ 127.)

He alleges that he continued speaking in the years that followed:

- "Throughout the Spring and Summer of 2021, Dr. Jensen continued to speak his perspective about the government response to COVID-19 and speak as an independent voice who questioned the dominant political narrative in the State of Minnesota and nationwide." (*Id.* ¶ 146.)

- "Along these lines, Dr. Jensen has written affidavits connected to lawsuits across several states, providing his opinion on COVID-19 policies regarding subjects such as mask mandates for children and adults without exemptions, and business and church closures. His public comments and opinions in this area led to his participation in a lawsuit filed in U.S. District Court in the Northern District of Alabama." (*Id.* ¶ 147.)

- "Dr. Jensen again made national news in September, 2021 when he publicly voiced his opinion on a social media video challenging a newly-announced Executive Order which would compel 100 million Americans to take a COVID-19 injection . . . ." (*Id.* ¶ 171.)

- "Plaintiff has made a number of political statements about COVID-19 and the government response thereto over the course of several years, as a Minnesota Senator, as a private citizen, and as a major-party nominee for Governor of Minnesota." (*Id.* ¶ 258.)

Jensen has not alleged when or in what context the Board's investigations prevented him from speaking on topics like those that prompted public complaints against him. Nor has he alleged, credibly or not, that some future speech of his would prompt future complaints and investigations that would chill his speech when previous investigations did not. Instead, the allegations as pled reveal that Jensen's speech was not chilled. His speech, both in frequency and apparent temperature, remained steady, regardless of Board receipt, investigation, and resolution of complaints.

7

Because Jensen has not plausibly alleged any objectively reasonable chilling of his speech, he has not set forth a concrete and particularized First Amendment injury. He therefore lacks standing for his First Amendment claims.

### 2. Facial challenges

Although Jensen's Complaint is overwhelmingly focused on his as-applied claims, he also purports to challenge certain Minnesota statutes as unconstitutional on their face. When asserting a facial challenge, a plaintiff must still satisfy the "normal requirements" of Article III standing. *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1009 (D. Minn. 2019) (citing *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005)). Accordingly, Jensen's failure to plead standing for his as-applied challenge eliminates standing for any facial challenge. *See Renne v. Geary*, 501 U.S. 312, 324 (1991) ("It is not the usual judicial practice, . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied."); *Mosby*, 418 F.3d at 933 (finding no standing for attorney to bring facial challenge to the rules of professional conduct without also challenging their application to herself). Jensen lacks standing for his facial challenges.

Standing for a facial overbreadth claim requires setting forth a significant difference between the as-applied claim and the facially overbroad claim. *See Final Exit Network*, 370 F. Supp. 3d at 1014. For a federal court to entertain such a claim, Jensen must identify how third parties would be affected by the statute differently from himself. *See id.* The terms "overbroad" and "vague" appear once in the Complaint, but not as a challenge to any statute. Jensen argues overbreadth and vagueness in his opposition brief,

but he cannot expand his Complaint through briefing. *See Northland Baptist Church of St. Paul, Minn. v. Walz*, 530 F. Supp. 3d 790, 814 (D. Minn. 2021). Jensen alleges no unconstitutional scenarios beyond his own case. Therefore, he lacks standing for a facial overbreadth challenge.

### 3. Unconstitutional conditions claim

Jensen's failure to adequately plead a First Amendment injury also eliminates standing for his unconstitutional conditions claim. *See Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 657 F. Supp. 3d 1161, 1174 (W.D. Wis. 2023) (stating the unconstitutional conditions doctrine "does not give rise to a constitutional claim in its own right; the condition must actually cause a violation of a substantive [constitutional] right"); *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006) (finding a statute did not amount to an unconstitutional condition where the First Amendment would not prevent imposing the statutory requirement). Because Jensen has not pled a First Amendment injury, he lacks standing for a claim that requires him to show that a government-imposed condition caused such an injury.

### 4. Viewpoint discrimination, equal protection claims

Jensen similarly lacks standing for his claims of viewpoint discrimination and "class of one" equal protection. To the extent that Jensen alleges harm on the basis of the Board violating his free speech rights but not others' rights, he has not pled a First Amendment injury as explained above. *See Zanders*, 573 F.3d at 594 (stating that First Amendment injury requires objectively reasonable chilling effect); *cf. Christa McAuliffe Intermediate Sch. PTO, Inc. v. DeBlasio*, 627 F. Supp. 3d 253, 262 (S.D.N.Y. 2022)

(stating that both discriminatory effect and discriminatory purpose are required for an equal protection claim). Jensen's lack of First Amendment injury makes his differential treatment theories more like "generalized grievances" or "bare procedural violations," which do not qualify as injuries in fact. *See Carney v. Adams*, 592 U.S. 53, 58 (2020); *Spokeo*, 578 U.S. at 341.

Though no conclusion is reached on this point, the requirement that licensed physicians comply with medical board requests for information following a complaint on medical matters is perhaps not a harm at all, let alone a harm unique to Jensen. As reflected by the Board's role in qualifying and overseeing physician practice, the Board is authorized to regulate the medical profession to safeguard the public health and welfare. All licensed physicians consent to the Board's regulatory framework as an important part of what being a licensed physician inherently means. The Board is required by law to resolve complaints, and it may request a response from the subject physician to determine jurisdiction or clarify the nature of the allegations. *See* Minn. Stat. § 214.103, subd. 2. Practicing medicine is a privilege. Any burden on Jensen to respond to the Board's requests upon receipt of complaints appears de minimis and an expected cooperation in a regulated profession that he voluntarily joined.

If Jensen's claim of harm is alleged differential treatment within the Board's investigation process, he again fails to plead an actual injury. His only allegations about how the Board treated other physicians are his conclusory and formulaic allegations based upon "information and belief." "In the post-*Twombly* and *Iqbal* era, . . . merely pleading on information and belief, without more, is insufficient to survive a motion to

dismiss for failure to state a claim." *Kampschroer v. Anoka Cnty.*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014); *see also Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023).

As a result, Jensen has not plausibly pled that the Board treated physicians with different views more favorably or responded differently to similar public complaints involving others. Jensen's allegations that the Board departed from its policy on the use of social media information are unavailing when plausible allegations of how the policy operated in other cases are lacking. Jensen therefore has not shown standing for his viewpoint discrimination and equal protection claims.

Without standing for his claims, Jensen's Complaint must be dismissed for lack of federal jurisdiction. Defendants' remaining arguments on sovereign immunity, qualified immunity, and failure to state a claim are beyond the scope of this Order.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. 26) is **GRANTED**, and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE** for lack of standing. Plaintiff may file an Amended Complaint within 21 days from the date of this Order. If no Amended Complaint is filed, judgment will be entered, and this matter will be closed.

Date: March 29, 2024                                *s/ Jerry W. Blackwell*
                                                                            JERRY W. BLACKWELL
                                                                            United States District Judge