UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Dr. Scott Jensen, | Civ. No. 23-1689 (JWB/DTS) |
| Plaintiff, | |
| v. | |
| Minnesota Board of Medical Practice; Ruth Martinez, Elizabeth A. Huntley, Cheryl L. Bailey, John M. Manahan, Peter J. Henry, *in both their individual and official capacities as members of the Minnesota Board of Medical Practice*; Brian Anderson, *in his individual and official capacity as a medical regulations analyst for the Minnesota Board of Medical Practice*; and Jane Roes 1–12 and John Does 1–4, *in both their individual and official capacities as members of the Minnesota Board of Medical Practice*, | **ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS** |
| Defendants. | |

---

Alexandra Howell, Esq., Douglas P. Seaton, Esq., and James V.F. Dickey, Esq., Upper Midwest Law Center; and Gregory James Joseph, Esq., Joseph Law Office PLLC, counsel for Plaintiff.

David M. Cullen, Esq., and Nicholas Lienesch, Esq., Minnesota Attorney General's Office, counsel for Defendants.

---

Plaintiff Dr. Scott Jensen was given 21 days to amend his complaint after the original was dismissed for lack of standing. (*See* Doc. No. 39.) He had alleged that the Minnesota Board of Medical Practice violated his First Amendment rights by reviewing anonymous complaints about his public statements concerning COVID-19. The dismissal was not based on the merits, which were never reached, but on the conclusory and non-

specific nature of key allegations. He had failed to plausibly allege an injury sufficient to satisfy Article III's standing requirement.

Jensen has returned with a longer complaint—13 more pages and 20 additional exhibits—but the case's essence is no different. (*See* Doc. No. 42 ("Am. Compl.").) The underlying facts were detailed in the dismissal Order and need not be repeated here. (*See* Doc. No. 39 at 1–3.) Jensen still claims that the Board, allegedly acting as a politically weaponized "censorship apparatus," retaliated against him for opposing official COVID-19 policies during the pandemic. (*See* Am. Compl. ¶¶ 11–12.) He continues to claim that the governing statutes are unconstitutional as enforced (Counts One and Two), that he was targeted for his views (Counts Three and Four), and that his license was impermissibly conditioned on ideological conformity (Count Five). (*See id.* ¶¶ 298–363.)

Defendants again move to dismiss, citing the same grounds: lack of standing, mootness, immunity, and failure on the merits. (Doc. No. 44.) The bulk of Defendants' arguments need not be addressed, because the threshold defects remain and are dispositive. Jensen's Amended Complaint still fails to plausibly allege a concrete, particularized injury resulting from the Board's conduct. Without that, he lacks Article III standing, the Court lacks jurisdiction, and the Amended Complaint must be dismissed.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss, a complaint must contain enough factual content to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than mere labels, conclusory allegations, or a formulaic

recitation of the elements; the plaintiff must allege facts that raise the right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even well-pled facts do not suffice if they suggest only a possibility of misconduct. *Iqbal*, 556 U.S. at 679.

In considering a motion to dismiss, well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). But courts are not required to supply missing allegations or accept legal conclusions dressed up as facts. *See Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir. 2009); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

**II.   Analysis**

As explained in the previous dismissal, federal courts only have jurisdiction to resolve actual cases and controversies. U.S. Const. Art. III § 2, cl. 1. The plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, this means alleging facts sufficient to support a reasonable inference that the elements of standing are met. *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 690–91 (8th Cir. 2017).

Standing requires an injury in fact, causation, and redressability. *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012). An injury in fact is a concrete, particularized, and actual or imminent invasion of a legally protected interest—meaning the invasion must exist and affect the plaintiff in a personal and individual way. *Spokeo,*

3

*Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). The injury must also be fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision. *Garang v. City of Ames*, 2 F.4th 1115, 1123 (8th Cir. 2021).

Jensen must demonstrate standing for each claim and each form of relief he seeks. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Courts tread carefully when government action implicates both professional licensing and public speech. *See NIFLA v. Becerra*, 138 S. Ct. 2361, 2375 (2018) (explaining that the First Amendment does not exempt professional speech from constitutional protection, particularly when speech is public and outside the doctor-patient relationship). Still, the receipt, review, and resolution of public complaints by a licensing board falls within the state's regulatory authority and is not, standing alone, a violation of constitutional rights. Where, as here, a plaintiff has been allowed a second chance to supply sufficiently particularized factual allegations to support standing but fails to do so, the complaint must be dismissed. *See Warth v. Seldin*, 422 U.S. 490, 501–02 (1975).

    **A.**    **First Amendment violations (Counts One and Two)**

Jensen's Amended Complaint suffers from the same flaw as the Original: it fails to sufficiently allege a concrete injury to confer standing under the First Amendment. He asserts that he "did, in fact, self-censor," declined speaking opportunities, and tailored his campaign message in response to the Board's inquiries. (Am. Compl. ¶¶ 76, 106, 155, 195, 223, 232, 235, 238b, 322, 344.) But the pleading still lacks enough supporting factual allegations to plausibly show that these reactions amounted to an actual chilling of protected speech.

At the pleading stage, courts take care not to decide the merits within a standing analysis. *Bierman v. Dayton*, 227 F. Supp. 3d 1022, 1028 (D. Minn. 2017). But whether Jensen has standing does turn on the nature and source of his claims. *L.H. v. Indep. Sch. Dist.*, 111 F.4th 886, 893 (8th Cir. 2024) (recognizing that the injury in fact inquiry is "bound up" with whether and how the law grants relief); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009); *Warth*, 422 U.S. at 500.

It is not enough for Jensen to say that a reasonable person would have felt chilled. He must plausibly allege that *he* was. The distinction between whether Jensen himself was deterred from speaking and whether a hypothetical reasonable person in his position might have been chilled is more than academic. The former determines standing; the latter concerns the merits. Conflating that distinction would turn a constitutional threshold, Article III standing, into a hypothetical inquiry into imagined harms to imagined plaintiffs. Article III standing demands actual, not hypothetical, harm.

Jensen also misreads the pleading standard. He suggests that merely asserting a chilling effect entitles him to proceed. (Doc. No. 51 at 28.) That is incorrect. Only well-pled facts—not conclusory allegations or labels—are taken as true on a motion to dismiss. *Iqbal*, 556 U.S. at 679. Generally alleging self-censorship, without sufficient context or details, does not survive *Twombly* and *Iqbal* scrutiny. *See Hawse v. Page*, 7 F.4th 685 n.6 (8th Cir. 2021); *Young America's Found. v. Kaler*, 14 F.4th 879, 888 n.7 (8th Cir. 2021).

The Amended Complaint alleges neither a specific instance of speech deterred nor facts suggesting an imminent threat of enforcement. Without either, there is no standing.

*Spokeo, Inc.*, 578 U.S. at 339–40; *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

### 1. Retrospective relief

Jensen seeks retrospective relief for alleged violations of his First Amendment rights. But the Amended Complaint does not plausibly allege a concrete injury. He asserts that he self-censored, tailored his campaign message, and declined speaking opportunities due to the Boards' actions. Yet he offers no additional specifics to support those claims: no description of topics he avoided, no speaking engagements he declined, and no messages he altered.

That omission matters. To survive dismissal, Jensen must do more than repeat key words flagged in the prior order. He must supply facts that earn the presumption of truth. He does not.

Indeed, his broader allegations undermine the chilling claim. At the same time that Jensen claims self-censorship, he describes a public role in which he actively and repeatedly opposed official COVID-19 policies. (Am. Compl. ¶¶ 133–35) (describing that Jensen "continued to share his perspective about the government response to COVID-19" and became known as "an independent voice who questioned the dominant political narrative in the State of Minnesota and nationwide"). He even details specific ways he kept speaking after the Board contacted him. (*E.g.*, *id.* ¶ 175.) Missing are the counterexamples: instances where he pulled back.

That distinction matters. Whether Jensen plausibly alleges chilling depends on whether the Board's conduct actually altered his behavior. On this record, it did not. *See Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018).

Jensen alleges other harms, including lost time and money, impacts on his political ambitions, inquiries from another professional board, lost sleep, and emotional distress. (Am. Compl. ¶ 238.) But these too fall short. Emotional distress alone is not a cognizable injury in fact that creates standing. *See Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024).

While the other alleged harms can support standing, they must still be tied to a concrete invasion of a protected constitutional interest. *See TransUnion LLC*, 594 U.S. at 425; *Associated Builders & Contractors W. Penn. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 288 (3d Cir. 2023) (rejecting argument that the plaintiff needs only to allege "some factual injury" and not a First Amendment injury to bring a First Amendment claim); *cf. Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029–32 (8th Cir. 2014) (holding that despite finding alleged economic harm to be a concrete and non-speculative injury, plaintiffs lacked standing because they did not suffer a particularized and actual injury). As explained further below, Jensen has not plausibly pled that the Board's preliminary activities crossed from routine professional review to targeted First Amendment infringement.

Jensen's cited cases do not support a different outcome on standing. *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971), involved associational rights and was not a standing case. *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003), involved the imposition of parking tickets for speech—state action with direct and tangible financial consequences. *Lutter v. JNESO*, 86 F.4th 111, 126–27 (3d Cir. 2023), involved compelled subsidization of speech through union dues. *PETA v. Rasmussen*, 298 F.3d 1198 (10th Cir. 2002),

7

involved threats of arrest. And *Straw v. Utah*, 2023 WL 4197651 (10th Cir. June 27, 2023), involved a specific violation of free speech and petition rights. None involved initial review of anonymous complaints where no penalty was imposed, as here. And none suggests that spending money—absent a concrete and particularized invasion of protected rights—establishes an injury in fact for First Amendment standing.

Jensen's Amended Complaint lacks the factual detail sufficient to make his allegations of self-censorship plausible. General statements that his speech was chilled—no matter how many times they are repeated—are too conclusory to accept as true. Without specifics, Jensen has not plausibly pled a concrete invasion of his free speech rights sufficient to support standing for retrospective First Amendment relief.

### 2. Prospective relief

To seek prospective First Amendment relief, a plaintiff must either identify what prospective speech is arguably prohibited or allege self-censorship in response to a credible threat of enforcement. *See L.H.*, 111 F.4th at 893; *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). Jensen does neither here.

At the time of the complaints, Jensen was not only a physician. He was a sitting state senator and a declared gubernatorial candidate, publicly discussing a disease and challenging pandemic policies during a public health crisis. His claims now rest on a changed landscape.

Jensen does not allege that he currently holds public office or seeks it. Nor does he plausibly allege that the COVID-era matters he addressed—commentary that drew the anonymous complaints at issue—are still at issue. On its face, the circumstances that

gave rise to Jensen's alleged chilling have passed.

Still, he claims an intent to speak on "public health" and "matters of public concern" in the future. (Am. Compl. ¶¶ 235, 289, 322.) But the Amended Complaint identifies no specific issue, venue, audience, or occasion. Taken together, he does not allege sufficiently concrete allegations of intended speech that would plausibly support prospective relief. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014) (petitioners sufficiently alleged intention to speak where they identified "specific statements they intend to make in future election cycles").

Jensen does not allege that he is in imminent danger of being silenced—only that he might be if someone files a complaint. (*See* Am. Compl. ¶ 322.) The constitutional implications of this concern obviously depend on what he might say, who might hear it, whether anyone reports it, and how the Board responds.

That is not a concrete injury. It is a daisy-chain of speculation and hypotheticals, with each link in the chain dependent on the one before it. "Might" and "if," whether alone or in series, cannot establish Article III standing.

The law requires more. *See L.H.*, 111 F.4th at 894–95 (claim that book may be challenged and temporarily removed from a library did not satisfy standing); *see also Murthy v. Missouri*, 603 U.S. 43, 57–58 ("guesswork" about actions of third parties is insufficient for standing); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.*, Civ. No. 13-1499 (SRN/FLN), 2014 WL 3748639, at *2 (D. Minn. July 30, 2014) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013) (Supreme Court is reluctant to find that future harm is "certainly impending" when its actual occurrence depends on the decisions or

9

actions of independent third parties)).

Jensen's Amended Complaint does not plausibly allege a future injury that is concrete, particularized, and imminent. He therefore lacks standing to seek prospective First Amendment relief.

### B.     Facial overbreadth

Jensen also brings a facial overbreadth challenge to portions of the Minnesota Medical Practice Act. As a threshold, he still must show Article III standing. *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1009 (D. Minn. 2019). To bring a facial overbreadth claim, Jensen must do more than argue that the law was unconstitutional as applied to him; he must also explain how the law could harm others in ways that are different from his own case. *See id.* at 1014. The Amended Complaint does neither.

As explained above, Jensen has not adequately pled a concrete injury to support his as-applied First Amendment claims. The facial overbreadth doctrine relaxes some standing rules, but a plaintiff cannot skip Article III standing altogether. *See, e.g.*, *Bigelow v. Virginia*, 421 U.S. 809, 816–17 (1975) (addressing limited exception to the usual standing rules for facial overbreadth but still analyzing whether plaintiff had satisfied standing requirement); *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005) (no standing for facial challenge where attorney did not challenge rules as applied to herself). Without establishing standing, there is no basis to consider whether the statute is overbroad as applied to anyone else. *See Renne v. Geary*, 501 U.S. 312, 324 (1991) (it is not usual or desirable "to proceed to an overbreadth issue unnecessarily").

Jensen attempts a facial overbreadth challenge but supplies no plausible reason to

treat it as distinct from his as-applied claim. The theory requires more than anecdote; it requires a showing that the statute deters a significant amount of protected speech by others. Jensen alleges a generalized climate of fear among unnamed professionals (Am. Compl. ¶¶ 292, 294) and names one other doctor—Robert Zajac—who Jensen says was investigated for COVID-related speech. (*Id.* ¶ 296.).

The reference to Dr. Zajac proves unhelpful. Jensen misstates both what Dr. Zajac said and why he was investigated. The underlying complaint—beyond the selective quote in the Amended Complaint—shows that the matter involved routine childhood vaccinations and allegations of direct patient advice. It did not concern COVID-19, and it did not involve public speech divorced from specific patient care. *See Zajac v. Statton, et al.*, Civ. No. 20-2148 (JRT/DTS), Doc. No. 1, 2021 WL 720453 (D. Minn. 2020). A second anecdote, no better than the first one of non-specific generalized fear, does not add up to standing for a facial overbreadth challenge.

  **C.**  **Viewpoint discrimination, equal protection (Counts Three and Four)**

Jensen's Amended Complaint falls short of plausibly alleging standing for his viewpoint discrimination and "class of one" equal protection claims. The allegations are largely conclusory, lacking specific supporting facts to plausibly show a concrete invasion of a legally protected interest.

As in the Original Complaint, the key assertions for these claims are made "on information and belief," with no allegations explaining the basis for the belief. That does not suffice under *Twombly* and *Iqbal*. *See Kampschroer v. Anoka Cnty.*, 57 F. Supp. 3d 1124, 1143 (D. Minn. 2014); *see also Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*,

11

59 F.4th 948, 954 (8th Cir. 2023). Jensen provides the basis for his "information and belief" that each Defendant is tied to the conduct in question (Am. Compl. ¶¶ 17–18, 20–24), but not for his allegations of differential treatment (*id.* ¶¶ 81, 331, 341–45, 348.)

There is no allegation showing that Jensen knows how the Board treated similarly situated licensees—no references to what other doctors said, no reports of ignored complaints, not even a hint that Jensen tried to find out. He speculates that Dr. Michael Osterholm, a public health expert, made public comments about COVID-19 transmission and, "on information and belief," was not investigated. (Am. Compl. ¶¶ 80–81.) Jensen offers no additional support to accept that conclusory allegation as true. The mere belief that someone else was not investigated does not amount to viewpoint discrimination. That requires showing both (1) that the Board declined to act against the comparator and (2) did so because it favored his viewpoint. Jensen plausibly alleges neither.

Jensen's equal protection claim fares no better. He invokes a "class of one" theory but fails to allege facts plausibly showing he was treated differently from others who were similarly situated in all material respects. *See Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (stating that a "class of one" plaintiff must show he was treated differently from others who are *identical* or *directly comparable* in all material respects). Jensen does not come close.

The mere act of reviewing complaints against physicians—even multiple times—does not itself invade rights unless it crosses into retaliation or viewpoint-based enforcement. *See Laird*, 408 U.S. at 13–14 (mere investigative interest in speech, absent enforcement or credible threat thereof, is not a constitutional violation). Government

12

regulators are permitted—and indeed, required—to exercise some discretion in assessing which matters may warrant further scrutiny. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008) (reasoning that "class of one" equal protection claim "is no proper challenge" to discretionary decision-making based on subjective, individualized assessments). Here, the Board was exercising discretion under state law. *See* Minn. Stat. § 214.103, subd. 2 (requiring the Board to receive and resolve complaints but allowing it to seek additional information and take other measures to reach resolution). A "class of one" theory is a poor fit to challenge the Board's individualized assessment of the complaints against Jensen.

Even setting aside that mismatch, Jensen fails to allege valid comparators. Dr. Osterholm's public statements were of a different nature than Jensen's. As for Dr. Zajac, that matter concerned childhood vaccines and included patient-specific advice—not COVID-related public commentary. And Jensen's vague claims that unnamed others were not investigated are unsupported by any facts about what they said, whether complaints were made, or how the Board responded. That is not enough. *See Robbins*, 794 F.3d at 996. Without any comparators, Jensen fails to plead a basis to find an invasion of his protected interests.

Jensen goes further, asserting that the Board must dismiss and may not investigate complaints involving political speech. (Am. Compl. ¶ 41.) But that overstates the law and conflates preliminary review with a formal investigation. The First Amendment does not bar preliminary review. A licensing board may review complaints to assess whether they implicate professional conduct, even if the underlying matter involves speech. *See*

*NIFLA*, 138 S. Ct. at 2372 (recognizing the government's authority to regulate professional conduct, even where it involves speech, so long as regulation does not target protected expression). What the Board may not do is discipline a licensee *because* of their viewpoint. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015) (government has no power to restrict expression because of its message or ideas); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995) (holding that viewpoint discrimination occurs when the government targets speech because of its ideology or perspective). The constitutional line is crossed not when speech is merely scrutinized, but when it is penalized for expressing a disfavored idea.

Jensen's allegations about the Board's motives are conclusory. While he plausibly alleges that complaints were filed and reviewed, he does not plausibly allege that any action was taken because of his views. *See Iqbal*, 556 U.S. at 680–81 (requiring more than conclusory allegations to show discriminatory intent). He describes the Board as political and retaliatory (Am. Compl. ¶¶ 226, 230, 320, 321) but does not supply factual allegations that plausibly show any matter was opened, conducted, or extended because of his protected viewpoints.

Indeed, the Board's own communications repeatedly disclaimed any view on the truth or falsity of the allegations in the complaints it received and stated that its actions concerning Jensen were taken pursuant to statute. (*See, e.g.*, Am. Compl. Exs. 1, 3, 7, 10 ("Please note that these are allegations only. The Board makes no assumptions regarding the truth of these allegations.").) And although the Board reopened certain files and held a conference to discuss the complaints with Jensen, none proceeded past the preliminary

14

review stage, and all were dismissed without discipline.

This context, on its face, undercuts drawing an inference that the Board's actions represent targeted, discriminatory enforcement rather than routine, discretionary review and resolution of complaints. At the pleading stage, only reasonable inferences are drawn in the plaintiff's favor. *Schriener*, 774 F.3d at 444; *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Without enough relevant, well-pled factual allegations, the Amended Complaint shows no more than the mere possibility that Jensen has standing for his viewpoint discrimination and equal protection claims. Mere possibility is not enough.

### D.     Unconstitutional conditions (Count Five)

Jensen lacks standing to claim unconstitutional conditions for the same reasons given in the previous dismissal order. (*See* Doc. No. 39 at 9.) The claim is not a standalone claim but an alternative theory for how the Board allegedly violated his First Amendment rights. *See Ark. Times LP v. Waldrip*, 37 F.4th 1386, 1391 (8th Cir. 2022) (stating that First Amendment protections "also prohibit the government from imposing unconstitutional conditions that chill or deter speech").

But here, as before, Jensen has not plausibly alleged that his speech was chilled, is being chilled, or faces imminent chill. Without that, he lacks First Amendment standing. And without standing, the claim cannot proceed.

## CONCLUSION

Standing must be plausibly alleged and may not assumed. *FW/PBS, Inc. v. City of*

15

*Dallas*, 493 U.S. 215, 231 (1990). Jensen was told that his Original Complaint failed to plead a concrete injury and was given a second chance. He used it to largely repeat the same conclusory statements across more pages. Still absent are plausible allegations that his speech was actually chilled or that any resulting harm amounts to a constitutional injury rather than regulatory inconvenience. Having failed twice to establish standing, Jensen's claims must again be dismissed.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. 44) is **GRANTED**, and the Amended Complaint (Doc. No. 42) is **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 31, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge